DABNEY M. CODDINGTON AND WIFE, MARTHA CODDINGTON, AND WILLIAM I. CODDINGTON, v. EDWARD W. STONE AND WIFE, MARGUERITE D. STONE.

(Filed 8 June, 1940.)

1. **Wills § 33g—Entire beneficial interest held to vest in beneficiaries at time of testator's death with right of full enjoyment postponed.**

The will in question devised all of testator's estate, real and personal, in trust for testator's three children by name and not as a class, with provision that when the youngest child should reach the age of twenty-one the estate should be divided into three parts and one part turned over to each of the children, and that each should thereupon become the absolute owner thereof and the trustee discharged. The will also appointed the trustee guardian for the children and provided that so much of the income of the estate as should be necessary for their maintenance and education should be expended for that purpose and that any surplus income should be added to the *corpus* of the estate. *Held:* Under the general rule, the entire beneficial interest vested upon the death of the testator with the right of full enjoyment postponed during the trust period and the provision that upon the termination of the trust "each of my sons should thereupon become the absolute owner of his respective share" does not affect the result, the words being construed as merely indicating that at that time each should hold his share free of the trust.

**2. Same—**

Where an estate is devised to a trustee of an active trust for the sole benefit of named beneficiaries, with direction to divide up and deliver the estate to them at the expiration of the trust period, ordinarily the beneficial interest will be *held* to vest immediately upon the death of the testator with right of enjoyment postponed, and this rule is applicable to an estate in trust of mixed personalty and realty.

**3. Same—**

Where an estate is devised in an active trust for the sole benefit of named beneficiaries, with direction that the estate be divided up and given to the beneficiaries at a stated time, the failure of the testator to provide for any limitation over upon the death of a beneficiary during the trust period, and the absence of provision for any other contingency, is indicative of his intent that the entire beneficial interest should vest immediately upon his death.

**4. Same—**

The rule that the entire beneficial interest vests immediately upon the death of testator when the estate is devised in an active trust for named beneficiaries and not to a class, with provision for the division of the estate among them at a stated time, without provision for any limitation over in case of the death of any of the beneficiaries, is in accord with the rule of construing a will against partial intestacy, since otherwise if one of the beneficiaries should die during the trust period, testator would die intestate as to his share.

**5. Same—**

The rule that the entire beneficial interest vests immediately upon the death of testator when the estate is devised in an active trust for named beneficiaries with provision for the division of the estate among them at the expiration of the trust, is in accord with the policy of the law favoring the early vesting of estates.

**6. Taxation § 32e—**

Under the provisions of the will in suit the entire beneficial interest in the estate vested in testator's three sons upon testator's death with the right of full enjoyment postponed until the termination of the trust. One of the sons died during minority, prior to the termination of the trust, leaving his two brothers as his sole heirs at law. *Held:* The surviving brothers took under the laws of descent and distribution and the estate so inherited is subject to the appropriate State and Federal inheritance taxes and is encumbered by the lien for such taxes.

APPEAL by defendants from *Sink, J.,* at March Term, 1940, of MECKLENBURG. Reversed.

The plaintiffs brought suit to compel the defendants to carry out their contract for the purchase of the lands described in the complaint.

The case was heard by Sink, J., upon agreed facts, of which the following are pertinent to the opinion and decision of the Court:

C. C. Coddington, Sr., died on 2 December, 1928, seized and possessed of a fee simple title described in the contract of purchase and sale be-

tween the parties. He left a will which was duly probated. Under the will, all the property of the testator was given in trust to the Union National Bank of Charlotte, North Carolina. The bank was made executor and the power given it to "sell, invest, reinvest, and change the investment" of the property from time to time, to collect rents, income and profits, and use as much of the same as was necessary "for the support, maintenance and education of my sons, Charles C. Coddington, Jr., Dabney M. Coddington, and William I. Coddington, until the youngest one of my said sons shall attain the age of twenty-one years"; any surplus of the income from the property during the trust period not necessary for the support and education of these three sons was required to be added to the *corpus* of the estate and held in trust in the same manner as the original *corpus*.

The present controversy hinges on Item III of the will, which is as follows: "ITEM III. When my youngest son, William I. Coddington, reaches the age of twenty-one years, I hereby direct the said bank to divide said property and estate into three equal parts and to turn over and deliver one of such parts to each of my sons, Charles C. Coddington, Jr., Dabney M. Coddington and William I. Coddington, and each of my sons shall thereupon become the absolute owner thereof and the said bank shall be discharged from any further duties as trustee." There was no provision in the will for other disposition of the property upon the death of any of the beneficiaries, and no residuary clause.

At the time of his death the testator was a widower with three sons, his only children and heirs at law—had he died intestate—C. C. Coddington, Jr., aged 13, Dabney M. Coddington, aged 11, and William I. Coddington, aged 9. The estate was worth more than a million dollars.

C. C. Coddington, Jr., died at the age of 18 years, in the year 1932, and William I. Coddington, the youngest of the children, became 21 years of age on 13 November, 1938. C. C. Coddington, Jr., was never married and left as his sole heirs at law his two brothers, Dabney M. Coddington and William I. Coddington.

The Union National Bank of Charlotte, North Carolina, qualified as executor under the will of C. C. Coddington, Sr., administered the estate and paid all State and Federal taxes then due. Purporting to act under the terms of the will, the executor divided the estate between William I. Coddington and Dabney M. Coddington at the time that William I. Coddington became 21 years of age, and the trust then terminated.

There has been no administration on the estate of C. C. Coddington, Jr., and there have been no inheritance taxes paid upon his estate either to the State of North Carolina or to the Federal Government. C. C. Coddington, Jr., left no estate except such as might have been a vested interest in his father's estate under the will aforesaid, and if such estate

did vest in him it is sufficient in value to require return and payment of inheritance taxes to the Federal Government and to the State of North Carolina. C. C. Coddington, Jr., left no debts or other obligations which would be a lien upon the property.

Upon the agreed state of facts the judge was of the opinion that no State or Federal inheritance taxes were chargeable upon the property distributed to the surviving children by reason of the death of C. C. Coddington, Jr., before William I. Coddington became twenty-one years of age, and that the property was, therefore, clear of any lien thus attaching. He gave judgment for the plaintiffs, from which the defendants appealed, assigning errors.

*Cochran, McCleneghan & Lassiter for plaintiffs, appellees.*
*W. C. Davis for defendants, appellants.*

SEAWELL, J. The only question argued before this Court was whether the will of Charles C. Coddington, Sr., conferred on his son, Charles C. Coddington, Jr., an inheritable estate at the death of the testator, or whether the purport and effect of the will was to vest the estate only when the youngest son became twenty-one years of age, at which time the will directs the estate to be divided into three parts and turned over to the beneficiaries. In other words, the question is whether the time at which distribution is required to be made is annexed to the substance of the gift, or merely operates to postpone its enjoyment. It was assumed that if C. C. Coddington, Jr., had an estate of inheritance at his death, which passed to his surviving brothers, the succession is subject to an inheritance tax, both State and Federal, and such tax would constitute a lien or encumbrance on the land, which is the subject of the purchase and sale contract between the parties; and it was assumed, conversely, that if no such inheritable estate passed at the death of C. C. Coddington, Jr., there was no tax due and no lien. Actually there may be other provisions of the State Inheritance Tax Law, the applicability of which might be considered in case no estate of inheritance vested at the time of the testator's death, but we need not consider them in view of the conclusion we have reached.

Whether the date appointed in the will for the completion of the trust and the division and turning over of the estate is a time annexed to the substance of the gift, marking the creation of the estate and the time of its vestment, or whether it operates as a mere postponement of the complete enjoyment of the estate vesting at the death of the testator, is, in this case, reduced to a question of testamentary intent, to be determined by the will itself, the situation as it existed between the testator and the beneficiaries under the will, aided by certain rules of construc-

tion arising out of both experience and policy which the courts are accustomed to apply.

If it be argued that the circumstance that the gift of the estate is expressed only in the clause requiring it to be divided and turned over at a certain time may indicate, *prima facie,* a contingency, the answer is that, taking the will altogether, it contains so many circumstances and provisions as to be controlling in the particular case against such presumption. *Hooker v. Bryan,* 140 N. C., 402, 53 S. E., 130.

We understand from the record that Mr. Coddington must have been a man of intelligence and business acumen, having built up a fortune of over a million dollars. He had three young children for whom to provide. We must assume, nothing else appearing to the contrary, that he was normal in his affections, his social impulses, his sense of obligation to his children and their immediate posterity, and the obligation that rested upon him to make a wise and just disposition of his great property, if he undertook to make any at all. But the will is amazingly brief and direct, considering the size of the estate involved; and if we accept the theory that he did not intend to have his estate to vest in any of his children upon his death, it is remarkably defective in its scheme of disposition, in its want of provision for obvious contingencies which must have presented themselves to the normal mind. We must assume from the record that he was acquainted with the vicissitudes of life as well as of business, and may well understand that their consideration were especially within his contemplation while engaged in the solemn act of composing his will. Yet he made no provision or disposition of his property or limitation over in the event of the death of any of the named beneficiaries, or all of them, before the date appointed for the division and delivery of the trust estate. At that time Charles, had he lived, would have been twenty-five years old and Dabney twenty-three. Had any of the sons died before that date, leaving a wife or children, these would have been left unprovided for if the estate did not vest at the death of the testator. *Perry v. Rhodes,* 6 N. C., 140; *Sutton v. West,* 77 N. C., 429; *Sims v. Smith,* 59 N. C., 347. This is but one of the many contingencies which might have happened.

The absence of any provision of this kind, and of any limitation over upon the contingency of the death of the beneficiary, has been considered to raise a strong inference that it was the intention of the testator to confer an immediate estate, vesting at his death. *Meyers v. Williams,* 58 N. C., 362; *Allen v. Van Meter* (Ky.), 1 Met., 264; *Young v. Stover,* 37 Pa., 105; *Goebel v. Wolf,* 113 N. Y., 405, 21 N. E., 388; *Robinson's Estate,* 13 Phila., 299 (set out in Note to *Shackley v. Homer,* 55 L. R. A. [N. S.], 1159); *Sammis v. Sammis,* 14 R. I., 123; *Foster v. Holland,* 56 Ala., 474; *Ordway v. Dow,* 55 N. H., 11.

It is generally held, nothing else appearing in the will to the contrary, that where an estate is devised to a trustee in an active trust for the sole benefit of persons named as beneficiaries, with direction to divide up and deliver the estate at a stated time, this will have the effect of vesting the interest immediately on the death of the testator. The intervention of the estate of the trustee will not have the effect of postponing the gift itself, but only its enjoyment. *Ordway v. Dow, supra; Tayloe v. Mosher,* 29 Md., 443. The rule is, we think, applicable to an estate in trust of mixed personalty and realty. *Safe Deposit & Trust Co. v. Wood,* 201 Pa., 420, 50 Atl., 920; *Sammis v. Sammis, supra.* In estates of this sort no distinction can be maintained between legacies, formerly governed by the rules of the civil law applied in the ecclesiastical courts, and devises governed by the rules of the common law, if such distinction has ever been strictly regarded by the courts of this State. *Hooker v. Bryan, supra.*

In approval of this principle and in support of the main proposition that under a will of this type the estate vests in the beneficiary immediately upon the death of the testator, the following North Carolina cases may be cited: *Guyther v. Taylor,* 38 N. C., 323; *Williams v. Smith,* 57 N. C., 254; *Fuller v. Fuller,* 58 N. C., 223. In *High v. Worley,* 32 Ala., 709; *Foster v. Holland, supra;* and *Shafer v. Tereso,* 133 Iowa, 342, 110 N. W., 746, the absence of a limitation over or any provision for a contingency or expression thereof was held to vest the interest in the beneficiary at the time of the death of the testator. *Hocker v. Gentry,* 3 Met. (Ky.), 463; *Sutton v. West, supra; Sims v. Smith, supra; Warrant v. Hembree,* 8 Ore., 118; *Goebel v. Wolf, supra.* In the latter case, the fact that there was nothing on the face of the will to indicate that the testator contemplated the death of any of his children during minority was considered, among other things, as indicative of the testator's intention to give them immediate interests. *Ordway v. Dow, supra; Robinson's Estate, supra; Re Lincoln Trust Co.,* 139 N. Y. S., 682; *Boraston's Case,* 3 Coke, 19a.

Of further significance is the fact that the executor-trustee is also made a guardian for C. C. Coddington, Jr., and the brothers, and is given the power to use such part of the income of the trust as might be necessary for the maintenance and education of the named beneficiaries during the suspensive period when the estate was left in the hands of such executor-trustee-guardian for its preservation and administration in the interest of the minor beneficiaries. The appointment of such a guardian would hardly have been necessary, under the discretion given the executor-trustee, except for a desire to bring such executor into a closer fiduciary relationship to the property destined for the beneficiaries, both with regard to the interest and income and with regard to the *corpus*

of the estate which it was handling. *Green v. Green,* 86 N. C., 546; *Branstrom v. Wilkinson,* 7 Ves. Jr., 431; *Bowman v. Long,* 23 Ga., 242; *Nelson v. Pomeroy,* 64 Conn., 257, 29 Atl., 534. The fact that the residue of the interest is returned to the *corpus* of the estate for further accumulation has been regarded as favorable to the construction of the immediate vestment of the gift; *Pierson v. Dolman,* L. R., 3 Eq., 315, 36 L. J., ch. (N. S.), 258; and this does not weaken the inference that the guardianship was of the whole estate involved.

It is true here that the whole income of the large estate was not required by the will to be devoted to the needs of the beneficiaries. Had it been so, under the great majority of decided cases, it would have been conclusive. *In re Harrar's Estate,* 91 Atl., 503; *Provenchere's Appeal,* 67 Pa., 463; *Partridge v. Clary* (Mass.), 117 N. E., 332; *Cropley v. Cooper,* 86 U. S., 167, 22 L. Ed., 109; *Fidelity Union Trust Co. v. Rowland* (N. J.), 132 Atl., 673; *Lippincott v. Stottsenberg* (N. J.), 20 Atl., 360. The best considered cases, however, regard the same presumption in favor of the immediate vesting to exist where only a portion of the income of the estate is intermediately given to the beneficiary, especially where there is no disposition of interest or income save that to the ultimate beneficiary. This is expressed in 2 Simes, Law of Future Interests, section 356, as follows: "This would seem to be for the reason that the gift of income shows that the testator intended the legatee or devisee to take some benefit from the gift of the principal immediately on the testator's death, and that the postponement of possession was merely for the benefit of the donee. The same presumption in favor of the vested character of a gift obtains where only a portion of the income is to be given for maintenance." *Witty v. Witty,* 184 N. C., 375, 114 S. E., 482; *Fox v. Fox,* L. R., 19 Eq., 286; *In re Williams,* L. R., 1, ch. 180.

Closely connected with the common sense reasoning which negatives any intention of the testator to leave the disposition of his property incomplete is the rule against intestacy. "An intestacy is a *dernier ressort* in the construction of wills, and it has been said that the abhorrence of courts to intestacy under a will may be likened to the abhorrence of nature to a vacuum." 28 R. C. L., p. 228. The presumption is against partial intestacy as well as against complete intestacy; *Austin v. Austin,* 160 N. C., 367; and an important failure to complete the scheme of testamentary disposition so as to provide for contingencies too obvious to be ignored, especially those which might interfere with the expressed testamentary intent with regard to the particular legacy or devise, raises a strong presumption that the testator understood himself to be making a final disposition in his gift of the property. Having undertaken to make a will at all, it is not consistent with sound reason-

ing that the testator would have left his estate dangling.    On the theory
that the gift is contingent, this would be the result in the case of the
death of one of the sons, which happened, or, in larger measure, upon
the death of them all, before the termination of the trust.    *Lavender
v. Rosenheim,* 110 Md., 150, 72 A., 669; *In re Cross,* 205 N. C., 160,
170 S. E., 660; *Holmes v. York,* 203 N. C., 709, 166 S. E., 889; *West
v. Murphy,* 197 N. C., 488, 149 S. E., 371.

Proceeding upon the same line of experience, as well as of policy, the
law favors the early vesting of property interests.    In some respects the
rule will be found in its supporting principles, both of fact and policy,
closely approximating the rule disfavoring intestacy.    Much weight is
given to it by the courts.    In *In re Mansur's Will* (Vt.), 127 Atl., 297,
the Court puts it this way: "This presumption is so favorably regarded
that no estate will be held contingent unless positive terms are employed
in the will indicating that such is the intention."    And in another leading
case it is thus expressed: "The law favors the early vesting of estates
and presumes in favor of the vesting of remainders in interest on the
death of the testator, if the language used is consistent with an intention
to postpone the enjoyment only.    This presumption is so favorably
regarded that no estate will be held contingent unless positive terms are
employed in the will indicating a contrary intention."    *Re Robinson's
Estate,* 98 Atl., 826.

We do not regard as importantly bearing on the time of the vesting
the expression in the will that when the property is delivered "each of
my sons shall thereupon become the absolute owner thereof and the said
bank shall be discharged from any further duties as trustee," since this
language is not inconsistent with the intention to vest the property on the
death of the testator.    In *In re Lincoln Trust Co., supra,* the phrase-
ology respecting the delivery of the estate at the termination of the trust
was that the trustee should convey to the beneficiary, and yet the Court
held the estate to have vested on the death of the testator and the con-
veyance to be with respect to a right the beneficiary already had.    The
words used may be regarded as meaning only that thereafter the estate
should be held free of the trust.

The case of *Witty v. Witty, supra,* supports so many of the principles
herein laid down that its separate citation opposite each one of them
would have been unnecessary repetition.    We call attention to the dis-
cussion of these subjects in that case in the opinion of the Court by
*Stacy, J.*

The intention of Mr. Coddington is so reasonably apparent that we do
not have to depend on technical rules of instruction, no matter how
appropriate.    It is the actual experience out of which these rules are
evolved which we consider of importance in the instant case—the factual

situation and reasoning which make them applicable. On any other hypothesis except an intent to vest the estate in his children by name and moiety at his death, having undertaken to dispose of his property by will, we must attribute to Mr. Coddington a futility of effort rarely found in one in his position.

As to the quality of the estate which thus vests, it must be noted that the beneficiaries are named as individuals, not as a class, and the "roll call" principle does not apply. There is no contingency named in the will, and none contemplated, by which the estate once vested may be defeated. Since the time named for the distribution is, as we have held, not annexed to the substance of the gift but merely postpones its enjoyment, the entire beneficial interest in one-third of the estate vested in C. C. Coddington, Jr., at the death of the testator, and upon his own death, in turn, passed from him to his surviving brothers under the laws of descent and distribution.

The property in question is, therefore, subject to the State inheritance tax, and to such Federal tax as may be appropriately imposed, and is encumbered by the lien of such taxes. The plaintiffs are, therefore, not at this time able to convey to the defendants an unencumbered title in accordance with their contract.

The judgment is

Reversed.